1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   PERRY C. BUTLER,                        CASE No. 1:11-cv-00723-MJS

12                Plaintiff,                  ORDER DENYING (1) CROSS-MOTIONS
                                             FOR   SUMMARY   JUDGMENT;   (2)
13        v.                                  PLAINTIFF'S   MOTION   TO   STRIKE
                                             EXPERT BARNETT'S DECLARATION; (3)
14   DR. O. ONYEJE, et al.,                   PLAINTIFF'S    MOTION     FOR
                                             SIMULTANEOUS      INTERPRETATION
15                Defendants.                 EQUIPMENT;    (4)    DEFENDANT'S
                                             MOTIONS   TO   STRIKE   PLAINTIFF'S
16                                           DECLARATIONS  AND  EXHIBITS;   (5)
                                             PLAINTIFF'S   MOTION    FOR    AN
17                                           EXTENSION   OF   TIME;   AND   (6)
                                             PLAINTIFF'S   MOTION/NOTICE    OF
18                                           CORRECT ADDRESS

19                                           (ECF Nos. 37, 43, 47, 48, 62, 63, 67, and
                                             76)
20

21   **I.      PROCEDURAL HISTORY**

22
          Plaintiff Perry C. Butler, a former state prisoner proceeding pro se and in forma
23
     pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 5, 2011.
24
     Plaintiff was incarcerated at Corcoran State Prison (Corcoran) before his release on
25
     March 2, 2011.  This action proceeds on his First Amended Complaint which alleges that
26
     Defendant Dr. O. Onyeje, a medical doctor at Corcoran, violated Plaintiff's Eighth
27
     Amendment rights.   Plaintiff contends that Dr. Onyeje's deliberate indifference to
28

                                          1

Plaintiff's ear symptoms caused Plaintiff to suffer cruel and unusual punishment prohibited by the Eighth Amendment.

On March 6, 2013, Plaintiff filed a motion for summary judgment or, in the alternative, summary adjudication of issues.  Defendant responded with his own motion for summary judgment on March 18, 2013.  The parties filed accompanying points and authorities, statements of facts, declarations, and evidence; responded to each other's filings; and filed objections and various other motions listed above.  All will be addressed as appropriate below.

The parties have consented to Magistrate Judge jurisdiction for all purposes pursuant to 28 U.S.C. 636(c)(1).  By Minute Order, dated May 29, 2013, the Magistrate Judge deemed the matters submitted without oral argument.  Local Rule 230(l). Nevertheless, papers related to the motions continued to be filed thereafter and mail addressed to Plaintiff was returned as undeliverable.  Rulings on the pending motions were held in abeyance until Plaintiff confirmed his correct mailing address.[1]  The motions are now ready for decision.

II.    **APPLICABLE LAW**

A.    **Summary Judgment**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing

---

[1]  Plaintiff's Motion/Notice of Correct Address, filed November 7, 2013, sufficed to notify the Court and the Defendant of Plaintiff's current address.  Accordingly the "Motion" portion of that filing is moot and denied on that ground.  Plaintiff's motions for an extension of time and for simultaneous interpretation equipment are rendered moot by this Order and are likewise denied on that basis.

1   party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1).

2   While the Court may consider other materials in the record not cited to by the parties, it

3   is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified

4   School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

5        In resolving cross-motions for summary judgment, the Court must consider each

6   party's evidence.  Johnson v. Poway Unified School Dist., 658 F.3d 954, 960 (9th Cir.

7   2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment,

8   he must affirmatively demonstrate that no reasonable trier of fact could find other than

9   for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

10  Defendant does not bear the burden of proof at trial and in moving for summary

11  judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re

12  Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).  If the moving party

13  meets its initial responsibility, the burden then shifts to the opposing party to establish

14  that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus.

15  Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

16       In attempting to establish the existence of this factual dispute, the opposing party

17  may not rely upon the denials of its pleadings, but is required to tender evidence of

18  specific facts in the form of affidavits, and/or admissible discovery material, in support of

19  its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586

20  n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a

21  fact that might affect the outcome of the suit under the governing law, Anderson v.

22  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust &

23  Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002), and that the dispute is genuine, i.e., the

24  evidence is such that a reasonable jury could return a verdict for the nonmoving party.

25  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

26       Summary judgment must be entered, "after adequate time for discovery and upon

27  motion, against a party who fails to make a showing sufficient to establish the existence

28  of an element essential to that party's case, and on which that party will bear the burden

3

1   of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

2       **B.**   **Eighth Amendment Inadequate Care**

3       The Eighth Amendment prohibits cruel and unusual punishment.  However, "[t]he

4   Constitution does not mandate comfortable prisons."  Farmer v. Brennan, 511 U.S. 825,

5   832 (1994) (quotation and citation omitted).  A prisoner's claim of inadequate medical

6   care does not rise to the level of an Eighth Amendment violation unless (1) "the prison

7   official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and

8   (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung,

9   391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th

10  Cir. 2002) (citation omitted)).

11      The deliberate indifference standard involves an objective and a subjective prong.

12  First, the alleged deprivation must be, in objective terms, "'sufficiently serious' . . . ."

13  Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the

14  prison official must "know[ ] of and disregard[ ]  an excessive risk to inmate health or

15  safety . . . ." Id. at 837.  "Deliberate indifference is a high legal standard." Toguchi, 391

16  F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the

17  facts from which the inference could be drawn that a substantial risk of serious harm

18  exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511

19  U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then

20  the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id.

21  (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

22      **C.**   **Qualified Immunity**

23      Government officials enjoy qualified immunity from civil damages unless their

24  conduct violates "clearly established statutory or constitutional rights of which a

25  reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

26  In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light

27  most favorable to the party asserting the injury, the facts alleged show the defendant's

28  conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001),

1   overruled in part by Pearson v. Callahan, 555 U.S. 223, 227 (2009) ("Saucier procedure

2   should not be regarded as an inflexible requirement").  The other inquiry is whether the

3   right was clearly established.   Saucier, 533 U.S. at 201.   The inquiry "must be

4   undertaken in light of the specific context of the case, not as a broad general proposition

5   . . . ." Id.  In resolving these issues, the Court must view the evidence in the light most

6   favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez

7   v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

8        Qualified immunity protects "all but the plainly incompetent or those who

9   knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  Therefore, "[i]f

10   the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is

11   entitled to the immunity defense."  Saucier, 533 U.S. at 205; Estate of Ford v. Ramirez-

12   Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).  "The principles of qualified immunity shield

13   an officer from personal liability when an officer reasonably believes that his or her

14   conduct complies with the law."  Pearson, 555 U.S. at 244.

15   **III.    FACTUAL SUMMARY**

16        **A.    Undisputed Facts**

17        The following facts are taken from the parties' respective statements of

18   undisputed facts.  The Court has considered each of the parties' responses to the

19   other's proposed facts and their objections to the evidence cited in support of the other's

20   facts.  Where necessary to the findings herein, the Court will address and resolve those

21   contests and objections. Otherwise, the opposing motions to strike are deemed denied

22   as moot since the Court bases its rulings only on the following undisputed evidence.

23        Unless otherwise noted, the following facts are found not to be in dispute:

24        On September 1, 2009, Plaintiff sought medical treatment for complaints of left

25   ear and throat pain.[2]  Defendant Onyeje did not work at the prison where this treatment

---

[2]   The precise form and content of the request for medical treatment is not determinative of the findings
here.  There does not seem to be any dispute but that Plaintiff indeed sought ear treatment at that time or
that Defendant was not the practitioner who responded to that request for care.  Whether, as Plaintiff says,
he asked to be referred to an Ear, Nose and Throat (ENT) specialist at that time is irrelevant.  The issue is
whether it violated the Eighth Amendment not to refer him sooner than he was referred, regardless of

1   was sought.

2       On or about May 5, 2010, after Plaintiff had been transferred to Corcoran, he

3   again sought treatment for ear pain and redness and was seen by Defendant Onyeje.

4   Defendant found redness and bulging in the ear but no drainage.  According to him,

5   Plaintiff's hearing was normal at that time.  Dr. Onyeje prescribed cortisporin (Neomycin

6   Sulfate/Polymycin B Sulfate/Hydrocortisone 3.5 mg/ml) ear drops, two drops per ear,

7   three times per day, for two weeks, and specified "NO REFILLS".

8       Plaintiff claims that at that time he requested referral to an ENT specialist, but

9   Defendant refused because referral would waste state money when he, Defendant,

10  could treat Plaintiff's ear infection himself. Defendant denies any such comment, and

11  insists he simply followed standard protocol for treatment of Plaintiff's condition in lieu of

12  referral to a specialist.[3]

13      According to prison medical records, Plaintiff saw Defendant Onyeje on May 14,

14  2010 and reported that his ear symptoms had resolved.  However, on May 25, 2010, he

15  again complained of discomfort and was found to have left ear pain and left ear hearing

16  loss.  Defendant prescribed an antibiotic tablet to be taken twice a day for ten days.

17      On or about June 9, 2010, Plaintiff returned to see Dr. Onyeje with continued left

18  ear symptoms: pain, swelling, and decreased hearing, but no drainage.  Dr. Onyeje

19  again prescribed cortisporin exactly as he had on May 9.  He did the same on July 28,

20  2010, but also added antibiotics and did then recommend that Plaintiff be seen by an

21  ENT specialist.

22      Plaintiff returned for treatment on August 23, 2010, without having seen a

23  specialist and continuing to experience left ear pain and redness as well as then

24

when he, who is not a qualified medical expert, thought he should be so referred.

25  [3]  Defendant suggests that since this evidentiary conflict is raised only by Plaintiff's self-serving, unsworn
26  statements and "contradicted" by the record, it should not be considered a basis for denying summary
    judgment.  Though not consistently followed by a standard form of oath, most of Plaintiff's statements are
27  sworn; see, for example, Plaintiff's response to Defendant's purported undisputed facts.  Moreover, the
    Court, while noting the lack of written corroboration of the statement in the record, does not find it is
28  "blatantly contradicted by the record" as Defendant suggests.  It is indeed a conflict which puts the truth of
    the statement in issue; whether it is "material" will be discussed below.

1    presenting drainage from the ear.  Dr. Onyeje again prescribed cortisporin as before.

2        Finally, on August 30, 2010, Plaintiff was examined by Victor V. Kiti, M.D., a

3    consulting ENT specialist.   After examination and a hearing test, Dr. Kiti made

4    preliminary findings[4] of a history of gradual onset hearing loss of one year's duration,

5    greater on the left than on the right, ear aches and drainage, frequent use of objects to

6    itch ears, ciprodex and cortisporin "not helpful".  Examination revealed raw, bloody skin

7    consistent with fungal otitis externa.  Dr. Kiti diagnosed "bilateral nerve type hearing

8    losses" with "superimposed fungal otitis externa".   He recommended cortisporin be

9    stopped, Tylenol be prescribed for pain and itching, "leave ears alone", further testing for

10    possible hearing aids, and a recheck in few months.  He also noted antibiotic "not

11    helpful."

12        On a September 14, 2010, re-exam, Dr. Onyeje concluded that Plaintiff's ear

13    infection had resolved.

14    **B.    Disputed Facts**

15        Plaintiff contends, and Defendant does not dispute, that Defendant prescribed

16    cortisporin over a one hundred day period despite manufacturer warnings that its use for

17    more than ten days could result in hearing loss.  Plaintiff maintains such prolonged use

18    can cause fungi to grow in the ears and it did so in his case.  He further notes that no

19    culture and susceptibility tests were performed even though the drug producer

20    recommended they be done and repeated if symptoms persisted beyond ten days and,

21    according to Plaintiff, such tests were necessary to properly diagnose his condition.

22    Plaintiff also maintains that he sought referral to an ENT specialist for almost a year

23    before he actually was seen by one and that Defendant refused to make the referral

24    because he wanted to save money for the state.  Plaintiff attributes his hearing loss to

25    the foregoing.

26        Defendant, acknowledges that cortisporin package inserts recommend use for

27

---

28    [4]  Recaps of Dr. Kiti's notes rely on the Court's translation of the doctor's shorthand and handwriting as aided by declarations from Defendant and Defendant's expert witness, Dr. Barnett.

only ten days, but he maintains that in practice it is acceptable to prescribe it for an additional two weeks or even a month to resolve an infection.   Indeed, Defendant maintains that the standard of medical practice and care directs that the primary care physician see how a patient responds to treatment like that he provided to Plaintiff before referring him to a specialist.   In his view the cortisporin label warnings relate to patients, unlike Plaintiff, who have ruptured tympanic membranes.   He acknowledges that while use of cortisporin may cause irritation, it does not cause fungus to grow in the ear canal and did not do so in Plaintiff's case.   He interprets the ENT specialist's report to say that Plaintiff's ongoing ear symptoms resulted from Plaintiff's use of foreign objects to scratch his ears and that Plaintiff's hearing loss was caused by longstanding neurological or sensory organ damage (usually caused by exposure to loud noise) unrelated to the fungus.   He also maintains that while culture and other testing may be called for in treatment of malignant cases where highly unusual organisms may be present, Plaintiff's case was not one of those cases.

## IV.   ANALYSIS

Stated simply, Plaintiff believes the undisputed facts show that he suffered long-term painful ear symptoms and hearing loss because of Defendant's knowing disregard of warnings against overuse of cortisporin medication and Defendant's refusal, motivated by cost concerns, to refer Plaintiff to an ENT specialist.   On the other hand, Defendant maintains that the unrefuted evidence shows that he treated Plaintiff properly in accordance with the applicable standard of care and that Plaintiffs symptoms and hearing loss were caused by Plaintiff, not anything Defendant did or failed to do.

Defendant is a licensed medical doctor specializing in internal medicine and licensed to practice in California.   He is qualified to proffer expert opinion evidence on the matters at issue.   Moreover, his opinions are supported in virtually every respect by those of Dr. B. Barnett, an experienced, Board Certified, Family Practice specialist.

Plaintiff is not a medical practitioner and has shown no training or experience that might qualify him to provide opinion evidence relating to the cause and effect of his ear

1   symptoms or the proper treatment of them.  As such, he has not presented competent
2   evidence to support his affirmative claims.[5]

3        That does not, however, end the inquiry, much less the case.  There are factual
4   issues which preclude granting Defendant's summary judgment motion.[6]  These include,
5   but are not necessarily limited to the following:

6        1.    There does not appear to be any dispute that Plaintiff did seek treatment
7   for his ear symptoms as early as September of 2009.  The issues of:  whether Defendant
8   could and should have reviewed the earlier medical records in connection with his
9   treatment in May 2010 and thereafter; whether or not such review should have
10  precipitated different treatment and different results; and, whether or not Defendant was
11  deliberately indifferent to an excessive risk of harm to Plaintiff in not checking those
12  earlier records and instead allowing eight month old ear symptoms to continue another
13  three months are not addressed or resolved in Defendant's papers or anywhere in the
14  motions.

15       2.    Although Plaintiff is not qualified to express medical opinion, the Court
16  observes that manufacturer's inserts/use recommendations generally accompany
17  medications and certainly are available for review by physicians prescribing medications.
18  The Court proceeds on the assumption that the cortisporin insert was available and
19  known to Dr. Onyeje and that he would not prescribe it or any medication without
20  knowing its recommendations, contraindications, adverse reactions, etc.    That
21  information is available to the public via <u>The Physician's Desk Reference</u>, a
22  commercially published compilation of manufacturers' drug labeling information.

23       The Physician's Desk Reference online[7], admittedly less technical and

---

[5]  If Plaintiff hopes for any possibility of actually prevailing on any of his claims (as opposed to avoiding
Defendant's summary judgment motion), it is incumbent upon him to be prepared to present competent,
qualified, expert medical evidence in support of his theories.  The absence thereof precludes consideration
of summary judgment or summary adjudication in his favor here.
[6]  Where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at
summary judgment on qualified immunity grounds.  <u>See</u> <u>Liston v. County of Riverside</u>, 120 F.3d 965, 967
(9th Cir. 1997); <u>Collins v. Jordan</u>, 110 F.3d 1363, 1369 (9th Cir. 1997); <u>Alexander v. City of San Francisco</u>,
29 F.3d 1355, 1364 (9th Cir. 1994); <u>ACT UP!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993).
[7]  <u>See</u> http://www.pdr.net/drug-summary/cortisporin-otic-solution?druglabelid=1485.

comprehensive, includes the following instructions for cortisporin:

> WARNINGS/PRECAUTIONS: May induce permanent sensorineural hearing loss due to cochlear damage, especially with prolonged use . . . . [Discontinue] promptly if sensitization or irritation occurs. Caution with use in controlling secondary infection in chronic dermatoses (eg, chronic otitis externa, stasis dermatitis) . . . . Prolonged use may result in overgrowth of nonsusceptible organisms, including fungi. Reevaluate if no improvement after 1 week.

"[B]urning, itching, irritation, dryness . . ." are identified as potential adverse reactions. The online reference recommends "[m]onitor[ing] for permanent sensorineural hearing loss or ototoxicity . . ." and directs that patients be counseled to "[discontinue] immediately and contact physician if sensitization or irritation occurs."[8]

Declarations from Dr. Onyeje and Dr. Barnett fall short of reconciling Dr. Onyeje's treatment with these guidelines and also ruling out that such failure knowingly disregarded an excessive risk and caused Plaintiff's continuing symptoms and hearing loss. Several points come to mind.

A. Dr. Onyeje and Dr. Barnett both aver that cortisporin can be, and regularly is, re-prescribed for another two weeks or even a month beyond the initial prescription period, i.e., a total of up to 40 days. According to Plaintiff's statement of undisputed facts, fact number 17, he was told to, and did, use the medication for in excess of 100 successive days notwithstanding continued irritation. Such evidence leaves the Court unable to determine as a matter of law that Defendant did not knowingly disregard an excessive risk of harm to Plaintiff.

B. Similarly, while there may be an innocent explanation for Dr. Onyeje's alleged (and disputed) statement about refusing Plaintiff referral to an ENT simply to save costs, the Court cannot, as a matter of law, here rule out the other, more callous reason for such a refusal.

C. Though Defendant plausibly attributes Plaintiff's hearing loss to

---

[8] The Court takes judicial notice of the public existence of this material, and hence its availability to Defendant, only insofar as a failure to act in accordance with it may evidence a knowing disregard to an excessive risk. The Court makes no finding as to the truth of the information contained in this material and cautions that it likely would not suffice to refute contrary competent medical evidence directly on point.

other factors, it is just as plausible that the clearly excessive (even by Defendant's standards) use of cortisporin did, as the insert warns, cause "permanent sensorineural hearing loss." (Interestingly, while the Defendant would suggest that Plaintiff's hearing loss was a result of longstanding damage, Dr. Onyeje's records suggest it arose during the twenty day period from May 5, 2010, when it tested "normal", and May 25, 2010, when it was first diagnosed.) The Court cannot find that the cause of Plaintiff's hearing loss is undisputed.

   D. Similarly, though Defendant plausibly attributes Plaintiff's fungal infection to other factors, it is just as plausible that the clearly excessive use of cortisporin did, as the insert warns, cause it.  (Suggesting that the fungus resulted from Plaintiff's using foreign objects to scratch his ears is unavailing where, as here, the insert suggests that the irritation Plaintiff was trying to alleviate may have been caused by the excessively prolonged use of cortisporin.)  The Court cannot find that the cause of Plaintiff's fungal infection is undisputed.

   E. That Plaintiff's ear irritation ended shortly after Dr. Kiti discontinued the medications prescribed by Dr. Onyeje is some evidence that the unexplained excessively long use of those drugs did indeed cause Plaintiff's significant symptoms to continue unnecessarily and in disregard of evidence from the manufacturer that it would do so.

**V.** **CONCLUSION**

   For the reasons discussed above, it is hereby ORDERED that:

   1. Plaintiff's Motion for Summary Judgment and Summary Adjudication (ECF No. 37) is DENIED;

   2. Defendant's Motion for Summary Judgment (ECF No. 43) is DENIED;

   3. Plaintiff's Motion to Strike Expert Barnett's Declaration (ECF No. 48) is DENIED;

   4. Plaintiff's Motion for Simultaneous Interpretation Equipment (ECF No. 47) is DENIED;

1

2

     5.     Defendant's Motions to Strike Plaintiff's Declaration and Exhibits (ECF Nos. 62 and 63) are DENIED;

3

     6.     Plaintiff's Motion for an Extension of Time (ECF No. 67) is DENIED; and

4

     7.     Plaintiff's Motion/Notice of Correct Address (ECF No. 76) is DENIED.

5

6

IT IS SO ORDERED.

7

    Dated:    __January 22, 2014__          __/s/ *Michael J. Seng*__

8

                               UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28